Can we please report Armin Stengel to Petitioner Cao Chung? I'd like to reserve two minutes for rebuttal. Sure. This is a pre-Real Idea case. That's an important part of this matter. Petitioner was involved with this movement called Zonggong since the 90s. The Chinese government banned Zonggong in 1999, so everybody that was practicing basically went underground. And this is what he did. He practiced the secret, and on April 27, 2001, he was arrested, detained, beaten, interrogated, physically abused by the police in China because of this Zonggong practice. Now, the issue in this case is whether or not he testified credibly to what happened that day. And we believe that substantial evidence would compel the conclusion that he did testify credibly as to this matter. As to the arrest date, the respondent was arrested on April 27, 2001, and the documents It was April or February. I'm sorry, February. Yeah. And he did testify credibly to that issue. Initially, he did testify that it was February. Actually, the arrest was April 27, was the actual arrest. He testified initially February. His counsel said, Are you sure he's this? I'm sure. Later on, the immigration judge did challenge him on that, and he said, I apologize. I meant to say April. I was nervous. The judge basically accepted that. He said nothing else. Okay, fine, great. That was the impression that everybody got. Is the difference between February and April material? No. I mean, it's only the year is the same. The date is the same. It's just a month. So March, April, two months difference. Okay. So this wouldn't go to the heart of his claim. I don't believe so, no. Okay. Plus, the evidence with the bail receipts, they support the April date, too. As to the other issues, there's the confession. Right. That's probably the strongest inconsistency, it seems to me. Maybe you can explain. Is it something in the translation? I mean, what's the explanation for why he would say? I think, you know, I wasn't the attorney at that time. But reading the transcript, I mean, he's asked about what happened. And he says, well, so practicing zong gong is illegal. He told me to make an honest confession. And did you do that? No, I didn't. So nobody ever asked him what is an honest confession. I mean, there's nothing about being forced. There's no forced confession. The statement says that they forced me to confess about the illegal gathering. They also asked me to sign a confession sheet. There's almost like two different confessions that he talks about in a statement. But it's all forced, and they told me to. Now, I believe when he says honest confession, they basically wanted him to volunteer a confession or voluntarily give a confession, which he just didn't do. That's what I believe was going on here. And nobody ever mentions anything after that. What page does that question and answer appear on? 116. And he also, once again, reiterates, you know, I won't be able to make an honest confession. Sorry, an honest connection, comma, confession. So I think what they're saying is, you know, did you make a voluntary confession? That's the way I read this. And then nobody, the judge, the trial attorney, his own counsel, never says to him, well, was it forced or did you make a forced confession? Nothing. Just they leave it alone. It moves on. No one ever brings it up. Even later on, the judge never asks him about this. Did you say it's page 116 of the? On the record, 116. And the statement is 414, 415. It's a statement he writes, a personal declaration. What numbers are we using? Are we using the administrative record numbers? No. It's the CAR, 116. Okay. I'm not finding it for whatever reason. The top of the page, it says I replied that I was practicing the song. Oh, okay. It's the, I don't know, maybe the second. See, then what happened, he told me to make an honest confession. So he's basically saying, you know. Oh, okay. See that? So he says connection. That's what I was asking. Is there some translation problem? You know, that might have been possibly. Well, actually, is he speaking through a translator? Yes. Okay. They mostly all do. Right. But I think that might have been, like, the interpreter could have been correcting himself. Like, I mean, to say, I said connection, you don't mean confession. I mean, we don't know what happened right there. Yeah. But it still deals with the honest confession kind of like, same kind of theme that he had before. See, I'm a little confused by some, because right before that, he says, I replied I was practicing Zong Gong in Wu's home. And the older policeman told me that Zong Gong is banned. So then the question is, then what happened? He told me to make an honest confession. Did you? No, I didn't. So what is it that he's asking him to confess to? He had just said I was practicing Zong Gong in Wu's home. What's left to confess to? Well, I think that they're trying to be picky here. They're trying to say you didn't specifically confess that you had an illegal gathering to overthrow the government. I mean, that's what the IJ is sticking on, or the VIA, because, you know, they have a statement here that he says those specific words. He doesn't say specifically that I confessed to an illegal gathering and I wanted to overthrow the government. He just says that he practiced Zong Gong, which that was his confession at that point. But, I mean, it's just that he didn't follow the exact, let's say, wording of his statement is what they're trying to hang him on. Oh, no, I understand that. I guess what I'm trying to figure out is what was he referring to when he said they wanted me to make an honest confession and I didn't? We really don't know what he meant by that. I mean, no one knows. I mean, no one ever followed up and said, what do you mean by honest confession? It's all, there's some speculation here, what was being said. But the way I would read it is that, you know, it was, did you voluntarily confess? No, I didn't. And then later on, it comes down to, you know, the statement says that he was forced to confess. So, I mean, the attorney should have asked him, what do you mean by honest confession? That would have been the proper question to ask. So, to conclude that, you know, that he's not credible for that reason, I think, is not supported by this record. I mean, you can't find someone in adversity credible, not credible for something like that. Another issue is the beaten if moved issue. BIA said that he failed to mention that he was beaten, you know, if he moved in that squatting position. Well, he was never asked about it. Anybody asked. No one asked him that question. And so a mere omission of details is insufficient to find someone not credible. Also on informing on the members. The BIA said he didn't mention that he was asked to inform on his own members. Well, he was never asked about it. No one did. His own attorney didn't ask him. The government didn't ask him. The judge didn't ask him. No one asked him. Counsel, why don't you, you're under now two minutes. Why don't we hear from the government and let you respond. Thank you. Good morning, Your Honors. My name is Ashley Martin, and I represent the government in this matter. Petitioner has presented the court with a divide-and-conquer approach to the agency's adverse credibility determination in this case. In fact, the agency identified five separate inconsistencies, omissions, and discrepancies in the petitioner's testimony, all of which are supported by the record. And when viewed either individually or as the court should view them cumulatively in the aggregate, they deprive the petitioner's testimony of the ring of truth and support the adverse credibility determination. As Your Honor noted, one of the reasons for the adverse credibility determination in this case was the issue as to whether or not the petitioner admitted to making some sort of confession to the Chinese authorities. Do you think that's the strongest of the five? Your Honor, I believe it is one of the strongest of the five. I think that whether or not you were forced to confess to illegal activity goes to the heart of a persecution claim. But didn't he do that? I mean, didn't he say, I was a member of Xiong Gong and we had an illegal gathering in Wu's home? He certainly testified that he told the police officers that he had been practicing Xiong Gong in a friend's home. He then goes on to – Is Xiong Gong illegal? Yes. And there was State Department evidence in the record indicating that Xiong Gong had been banned by the Chinese government along with Falun Gong. Admittedly, most of the State Department evidence focuses on Falun Gong, but there was a mention of Xiong Gong as well. When considering the issue as to the confession, I think that the appropriate starting point is the petitioner's written statement that was attached to his asylum application, and in that statement he says, they forced me to confess that our illegal gathering proposed to overthrow the government. The agency was first looking at that written statement and then comparing it to his testimony, which is on page 116 of the administrative record, where he mentions, yes, I was at a friend's home. We were practicing Xiong Gong. Then he's asked by his attorney – oh, I'm sorry. He then goes on to say, the police officers told me to make an honest confession. He's asked by his attorney, did you? No, I didn't. The agency was comparing that to the written statement and appropriately saw an inconsistency there. Well, okay. But, you know, this is a – the lawyer at 116 is just going through a chronological account of what happened. The written statement isn't specific as to when he was forced to give that confession, right? So it could well have been at some later point, and just at this particular point, maybe he wasn't forced to give an honest confession. Well, Your Honor, that's correct, but what's relevant here is that the petitioner at no point in his testimony during the merits hearing before the immigration judge, he never indicated that he confessed to anything of any nature. Was he ever asked if he was forced to confess? The only point where he was directly asked about that is page 116 of the record. Right. So the immigration judge certainly never pointed out to him, well, wait a minute, sir, in your written statement, which I have right here, you said X, and now you're saying Y. Can you reconcile those? He was never given an opportunity to do that, right? Your Honor, that's correct, and on that issue – Doesn't that seem only fair if you're going to rely – you claim this is the strongest of the inconsistencies, that at least somebody point out to the petitioner that, hey, there's this tension. Can you please explain what's going on? Your Honor, this Court does have case law saying that a pre-Real ID Act cases, an applicant should have an opportunity to explain inconsistencies. That opportunity may come on direct examination. It may come on cross. It may come on questioning by the immigration judge. Here he had the burden of establishing the details of his persecution claim. He could have clarified anything he wished to clarify on direct examination. Your Honor, I just want to make sure I understand. Your argument, or the I.J.'s argument, was that because in his statement he said point number two, they forced me to confess that our illegal gathering proposed to overflow the government, and then in his testimony he said they wanted me to make an honest confession, and I did not. You're saying that that's an inconsistency. Is it an inconsistency because he omitted what was said at point two, or is it an inconsistency because honest confession means what's in point two, or what? I'm really, frankly, a little unsure of how that's even inconsistent. It seems to be an omission maybe, but I'm not sure it's inconsistent. Can you explain that? Well, Your Honor, I think substantial evidence supports the agency's view that this was a direct contradiction with a written asylum statement. We don't even know what honest confession means. I mean, at least counsel didn't, and we don't. Maybe you do. Well, I think that there are two plausible readings of that testimony, and one is that he made he didn't make a confession to the police officers of engaging in illegal activity or anti-government activity. Another reading is the one presented by the petitioner, that he was simply denying making a confession that was voluntary. And on a petition for review, it's the petitioner's burden to point to evidence compelling their interpretation. To Judge Watford's point, I mean, I'm a trial judge. If I thought somebody was lying to me from the stand, then I might ask them a question like, what do you mean by that honest confession, and see if it comes up consistent with this statement or inconsistent. To find out, the judge didn't do that. Your Honor, you're correct. The immigration judge did not do that in this case. But even if we were to take the issue of the confession out of this case, you still have substantial evidence supporting the adverse credibility determination. There was an inconsistency as to the date of the arrest. Which you concede is neither here nor there, right? It doesn't matter for purposes of the strength of his claim whether it happened in February or April, does it? No, Your Honor, I don't concede that. Why is it material? It's material because the heart of his claim is this arrest and his treatment. It doesn't matter when it occurred in the calendar year, does it? It matters as to the petitioner's credibility. I mean, this is the very basis for his persecution claim. Can you consistently tell the court. That it happened in February as opposed to April. That's the heart of his claim. The heart of his claim is the arrest itself. Right. So if he made up some detail about the arrest and you found inconsistencies there, great. But if all you're talking about is he got the date wrong and explained that, hey, I was nervous, and I get dates wrong all the time about stuff far, far, you know, more consequential than this. Well, and he could have told the court that he didn't remember the date, that he generally remembered the time of year. But I don't believe the view that that is simply a minor tangential inconsistency is supported by this Court's case law. If an applicant gets a date wrong and it's a date that is completely tangential to the claim, whereas to maybe in this case if he were to give a date as to when he graduated college and he got that date wrong, that would be tangential to this claim that revolves around arrest, detention, beatings. But the date of his arrest is not tangential. And even moving beyond that, you still have other inconsistencies identified by the agency. For one thing, in his written statement, the Petitioner said that he was forced to or asked to provide police officers with the names of other Zong Gong practitioners. He failed to mention that in his testimony. Was he ever asked about that? No, Your Honor. He was not directly asked. I don't – there's no inconsistency. There's at most an omission. But again, if the immigration judge thought that that was significant to judging this man's credibility, wasn't there an obligation to ask about that? Your Honor, at the time of the merits hearing before the immigration judge, this Court had not yet rendered its decision in soto alarte, which did expressly say that an applicant should have an opportunity to explain. So with due regard for the immigration judge, that wasn't the controlling case law at the time. However, I would like to point out to the Court that there were two inconsistencies in the Petitioner's testimony that he was asked about when he was questioned by the immigration judge. One of those was the date of his arrest. And the other one of those inconsistencies had to do with whether or not he was interrogated once or twice. He was asked about that by the immigration judge on page 154. And I think that his response to the immigration judge's questioning on that issue is very telling. He was asked, okay, it's not entirely clear from your written statement how many times you were interrogated. You indicated that it was once. Today you're telling us that it was two times. Can you explain that for me? And if you look at page 154 of the record, he wasn't able to provide a cogent explanation. Well, is this the part where he says, when I, and then there's something that's indiscernible, the case, I only mentioned the, I was persecuted and beaten up and I didn't mention the number of the, it's the number? Is that what you're referring to? That is what I'm referring to. And then the immigration judge follows up and says, that's your explanation. And then he responds, well, I wrote a brief briefly in the case. I mean, there's nothing in that that really explains where, where this, how this inconsistency came about. Okay. Counsel, your time has expired. We appreciate your argument. All right. We'll hear rebuttal from counsel for the Petitioner. Just briefly, Your Honors. The statement, the written statement never specifically mentions how many interrogations he had. I mean, normally these statements say I got interrogated here and there and there. No, it just says interrogation. And in the way it's written, it could be like plural or singular. So he explains later, you know, there were two. And I just discussed my persecution in my statement. I think the, also the IHA did know that he needed to address the inconsistencies with the Respondent, with the Petitioner, sorry. He did bring it up about the date. He said, look, you said this date. Why did you say this date? You know, I was nervous. Okay, that's your explanation. Fine. But he never, he never mentions anything to the Respondent, Petitioner, about the confession, as the Court noted, about the beating of MOVED, about the informing on the members. So if an IJ is silent, you know, you assume that he accepts it. And that's what I believe happened here. And I believe this Court has stated that an IJ needs to clear up inconsistencies with the Respondent, with the Petitioner in these matters. And they didn't do that. When the IJ did, he got an explanation, you know, and it seemed like he accepted it. I don't think the date's an issue, as the Court. Well, let me ask you this. Let's assume that we agreed with your argument on this front. What is it that you want us to do in terms of a remand? Well, the Court never discusses the merits of the, you know, was it persecution? Well, let me be more specific. Do you want us to remand and say to the BIA that you now need to deem his testimony credible, or should they have another opportunity to reevaluate that issue in light of the fact that perhaps we haven't found any of the explanations so far persuasive? I think if this Court finds him to be credible, then they'll remand it back to the immigration judge, because I don't think the BIA can go through the factual analysis based on case law. That's the way I would see it. And very rarely do they make their own facts up or, you know. But I would say remand to the agency to make a determination whether or not he suffered past persecution. Okay. There's no need to give the agency an opportunity to make a fresh credibility determination. No. I don't think so. Okay. I just think based on the record, I think it's sufficient that he was credible in this case. Okay. Thank you. The case just argued will stand submitted.
judges: Smith, Noonan, Watford